IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| UNITED STATES OF AMERICA | Case No. **3:21-MJ-00414-DMS** |
|---|---|
| v. | |
| **Joshua Elijah PATE** | |
| Defendant | |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A CRIMINAL COMPLAINT

I, R. Allen Adair, being duly sworn, hereby depose and state:

### TRAINING AND EXPERIENCE OF AFFIANT

1.      I am a Police Detective employed by the Municipality of Anchorage Police Department (APD) and am presently a Commissioned Police Officer in the State of Alaska, assigned as a Task Force Officer to the Bureau of Alcohol, Tobacco, Firearms, and Explosives, Anchorage Field Office.    Between May 2007 and April 2019, I was assigned to APD's Vice Unit.    My responsibilities within the Vice Unit involved investigations related to the trafficking of controlled substances.

2.      I have more than twenty-five years of combined law enforcement experience.  I was an explosive and drug detector dog handler with the United States Air Force from June 1991 to August 1996.  In August 1996, I was credentialed as a Special Agent with the Air Force Office of Special Investigations.  In August 2004, I left active duty with the military and was employed with the Anchorage Police Department as an Officer.  I retired from the Air Force Office of Special Investigations in May 2011.

AUG - 2 2021

3.     I have graduated from three basic law enforcement academies. The first was the United States Air Force Police Academy in December, 1991. The second was the Air Force Office of Special Investigations Academy in November 1996 and the third was the APD Academy in January of 2005; as a result of my training and experience, I am familiar with the Federal Firearms and Drug laws.

## PURPOSE OF AFFIDAVIT

4.     This affidavit is submitted in support of a criminal complaint charging **Joshua Elijah PATE** with violations of Title 18, United States Code, Section 922(g)(1), making it unlawful for any person who has knowingly been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year to possess in or affecting commerce, any firearm or ammunition.

5.     I have participated in the investigation of the offense set forth below.  The facts and information contained in this affidavit are based upon my personal knowledge, information obtained from federal, state and local law enforcement officers and information obtained from interviews and analysis of reports.  Unless specifically indicated, all conversations and statements described in this affidavit are related in substance and in part only and are not intended to be a verbatim recitation of such statements.

6.     I have not set forth each and every fact learned during the course of this investigation.  I have set forth only those facts which establish the foundation for probable cause.  Facts not set forth herein are not being relied upon to establish probable cause.  Nor do I request that this Court rely upon any facts not set forth herein in reviewing this affidavit in support of a criminal complaint.

AUG - 2 2021

## PROBABLE CAUSE

7.     At approximately 12:40 p.m., July 14th, 2021, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Special Agent (SA) Sarah Foreman and I were driving westbound on Northern Lights Boulevard from Patterson Street, Anchorage, Alaska.   I heard Anchorage Police Department (APD) Patrol Officers responding to the vicinity of 2834 Rose Street and would later learn a molotov cocktail was thrown at 2834 Rose Street.  Based on prior investigative activity, I knew convicted felon, Joshua Elijah PATE resided at 2834 Rose Street #A with his girlfriend, Gretchen Ann WEDEKIND, who was also a convicted felon.  Over the course of the past month, I received information indicating PATE was routinely in possession of firearms and illicit controlled substances.  I knew PATE was released from supervision with the United States Probation Office in Anchorage for federal drug and firearm violations in December 2019.  In addition to the above-mentioned information, I received information PATE and Mark Cruz NYSTUEN were engaged in long standing feud over WEDEKIND and the molotov cocktail was likely involved in their ongoing dispute.

8.     SA Foreman and I drove to the Rose Street address and parked northeast of 2834 Rose Street to observe and assist if needed.  I noticed Officer Stefan Bentz parked to the southeast of 2834 Rose in his unmarked Police vehicle and he was accompanied by Officer Brayton Johnson in a marked Police vehicle.  A few moments later, I observed PATE arrive in a gray 2001 Audi A6 sedan, Alaska License: ECE322.  PATE parked to the north of his Rose Street address and he was the sole occupant of the vehicle.  PATE got out of the driver seat of the Audi and opened the trunk of the sedan.  It did not appear PATE was aware Officers were outside his home, as his view was partially obstructed by other vehicles.  SA Foreman and I had an unobstructed view of PATE.

AUG - 2 2021

PATE got out of the driver seat, opened the trunk of the gray 2001 Audi A6 sedan, Alaska License: ECE322 and started to remove a backpack adjacent to the left rear inner part of the vehicle. It appeared PATE simultaneously notice Officer Johnson in Police uniform standing at the front of 2834 Rose Street. PATE returned the backpack to the trunk and closed the deck lid. It was evident based on PATE's demeanor there were items in the backpack he was concerned about.

9.  PATE walked to the front of 2834 Rose Street where he spoke with Officers. PATE was cursing at Officer Johnson for a previous contact between the two and claimed not to know who threw the molotov cocktail at his home. Officer Johnson spoke with PATE about the backpack in his trunk and PATE stated he was not aware of what Officer Johnson was speaking about. *(Note: I relayed my observations to Officer Johnson when PATE arrived.)* During the contact with Officers, PATE asked Officer Johnson if he could defend himself with "lethal intent" as he pointed to the scorched area at the front of his home. PATE went on to say, "If I have a gun, can I do it then? Because I'm a felon, how am I supposed to have a gun? I can't have a gun, I can't have nothing!" PATE' demeanor grew increasingly more hostile and animated, I intervened and requested to speak with PATE in the area to the north of where he parked his Audi. I explained to PATE Officers were there to help him and his reaction to them was disrespectful and unnecessary. I explained my observations to PATE with respect to his arrival, the backpack, and prior Police contact on June 18th, 2021 when he was found in possession of over $10,000 dollars, heroin, and firearms in his vehicle. I told PATE I believed the backpack also contained illicit controlled substances and/or firearms and I requested a drug detection K-9 respond based on my suspicions and observations. PATE asked me what I wanted from him and alluded to wanting to cooperate with Law Enforcement. I reminded him during his prior contact last month he also told Officers

he could assist by purchasing kilogram quantities of illicit controlled substances. PATE told me he was willing to assist me in this same capacity if I would not have the K-9 respond. I asked PATE if the backpack contained controlled substances and he told me it did not. I asked PATE what he was concerned about and he told me there were no drugs inside the pack. Based on his statements, it was clear there was at minimum a firearm inside the backpack. I asked PATE if that was the case and he again pleaded with me not to pursue the contents of the backpack inside his trunk. I asked PATE if the firearm was stolen and he stated it was not and he needed it to protect himself. I reminded PATE he was previously convicted of federal drug and firearm violations and he was prohibited from possessing firearms. PATE acknowledged my statements and again pled with me not to pursue the contents of the backpack or vehicle.

10.   I returned to my vehicle as Officer Johnson remained with PATE's Audi until the K-9 Officer arrived. PATE walked up to my driver window and again plead with me in the presence of SA Foreman to forgo the interest in his backpack and he assured me a firearm was the only item that would be located inside the pack. I asked PATE for consent to search to backpack and he declined.

11.   Officer Johnson impounded the gray 2001 Audi A6 sedan, Alaska License: ECE322, to APD's indoor secured storage area pending application of a search warrant (3:21-MJ-00390-DMS). On July 19th, 2021 a search warrant was sought and received authorizing the search of the Audi operated by PATE on July 14th, 2021. ATF Resident Agent in Charge (RAC) Aaron Ybarra and I executed the warrant after it was received. In the left rear corner of the trunk was the backpack I observed PATE begin to remove from the vehicle. Inside the backpack was a loaded HK USP Compact, .40 caliber pistol, Serial Number: 26-096913. The chamber of the pistol was

loaded with a single round of hollow-point ammunition. The remaining seven rounds in the pistol's magazine were .40 caliber shotshells. The pistol and ammunition were seized. During the execution of the search warrant, PATE telephoned me and attempted to act as though he was surprised a pistol was actually seized from the pack, despite admitting the firearm would be located in the pack the prior week. I terminated the telephone call. At the conclusion of the search, called PATE back after numerous unanswered calls and messages from him. During our recorded conversations following the search warrant, PATE admitted to owning and possessing HK USP Compact, .40 caliber pistol, seized from the backpack.

12.    ATF Special Agent Ryan Borgeson conducted a review of the HK USP Compact, .40 caliber pistol, Serial Number: 26-096913 and the ammunition loaded in the magazine and chamber. Based on his opinion, if the firearm and ammunition were received and/or possessed in the State of Alaska, they had to have traveled in and affected interstate or foreign commerce as defined in Title 18 U.S.C. § 921 (a)(2).

13.    A review of criminal records on file with the Alaska Public Safety Information Network and the National Crime Information Center disclosed the following felony convictions for PATE:

-06/06/2000 State of Alaska Burglary in the First Degree

-11/17/2000 State of Alaska Theft in the Second Degree

-12/13/2007 Federal Drug Conspiracy and Felon in Possession

AUG - 2 2021

## CONCLUSION

14.   Based on the aforementioned information and my training and experience in firearms related investigations, I believe there is probable cause to believe **Joshua Elijah PATE**, knowingly possessed a firearm and ammunition while having been convicted in any court, of a crime punishable by imprisonment for a term exceeding one year, and affected commerce, a violation of Title 18, United States Code, Section 922 (g)(1).

Digitally signed by RANDY ADAIR (Affiliate)
Date: 2021.08.02 08:35:50 -08'00'

R. Allen Adair
Task Force Officer
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Sworn ~~and subscribed before me~~ *telephonically* in Anchorage, Alaska

This 2nd day of August, 2021

United States District Court Magistrate Judge
District of Alaska